# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs April 9, 2013

## LESTER PAGE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 09-01298     James Lammey, Jr., Judge**

---

**No. W2012-01466-CCA-R3-PC  -  Filed August 19, 2013**

---

The Petitioner, Lester Page, contends that his guilty plea to incest, a Class C felony, was not knowingly and intelligently entered because he received the ineffective assistance of counsel and that the post-conviction court erred in denying him post-conviction relief. After a thorough review of the record and the applicable authorities, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and JEFFREY S. BIVINS, JJ., joined.

Paul K. Guibao, Memphis, Tennessee, for the appellant, Lester Page.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Senior Counsel; Amy P. Weirich, District Attorney General; and Lora Fowler, Assistant District Attorney General; for the appellee, State of Tennessee.

## OPINION
### FACTUAL BACKGROUND

The record reflects that the Petitioner was indicted on February 26, 2009, for incest, a Class C felony, and rape, a Class B felony. The Petitioner pleaded guilty on September 15, 2010, to incest. Probation was denied, and he was sentenced to serve ten years in the Department of Correction; in exchange for his plea, the rape charge was dismissed. No direct appeal was filed. On May 31, 2011, the Petitioner filed a pro se petition for post-conviction relief. Counsel was appointed, and an amended petition was filed on December 8, 2011. The petitions alleged multiple grounds for relief, but only the following issues were raised at the hearing: the Petitioner's trial counsel rendered ineffective assistance of counsel

by (1) failing to request a mental evaluation of the Petitioner and (2) leading him to believe that he would get probation if he pleaded guilty, which resulted in the Petitioner entering a plea unknowingly and unintelligently. A hearing on the petition was held on May 18, 2012. The following evidence was presented at the post-conviction hearing.

The Petitioner and his trial counsel testified at the hearing. During the Petitioner's testimony, he stated that he met with trial counsel "a lot of times." He explained that he pleaded guilty because he did not understand the "big words" and really thought he was going to get probation because trial counsel said they "were looking at it." The Petitioner explained that he had told trial counsel about phone records he had where the victim told him "she was sorry and she lied and made a false statement on [him], which [he] got in writing[.]" He further explained that he believed this would get him a better shot at probation. The Petitioner testified that trial counsel told him not to ask the judge any questions at the hearing, "[j]ust go in there and say, 'Yes sir/no, sir'; and don't say nothing." When the Petitioner asked why, trial counsel said, "Well, you don't want to mess with this prosecutor because she's tough." The Petitioner said that he had tried to get a trial date multiple times, but trial counsel told him that he would be tried on both charges in the indictment and that trial counsel would work out something better than going to trial. The Petitioner also testified that he had a psycho-sexual evaluation in jail, which reported that he did not have any mental issues, but he disagreed with that determination because he had "mental-health issues" and had been prescribed Thorazine.

The Petitioner admitted that the trial court told him at the guilty plea hearing that probation was not guaranteed and that he told the trial court that he still wanted to plead guilty. He also admitted that he did not tell the trial court of any of the alleged issues he had with trial counsel but insisted that was because trial counsel told him to only answer yes or no sir. However, the Petitioner further admitted that he gave more extensive answers than yes or no during the joint guilty plea and sentencing hearing. He insisted that he did not know what incest was and that he only recently learned what it means. The Petitioner explained that he just told the trial court he understood everything and that trial counsel had explained everything to him because he "was tired of sitting downtown in 201 Poplar, and [he] had enough of it."

Trial counsel testified that he gave the Petitioner a copy of the incest statute and the pattern jury instruction. He stated that he would be surprised to learn that the Petitioner had reading and writing difficulties because despite the Petitioner's failure to complete high school, he had never noticed any such difficulties. Trial counsel stated that he believed the Petitioner's assertion that the sexual encounter was consensual, so he asked the prosecutor to re-interview the victim based on that belief. However, trial counsel stated that there was no question as to whether he had sexual relations with a blood relative; the Tennessee Bureau

of Investigations (TBI) report proved that fact. Trial counsel stated that he had tried approximately 100 cases and that he would have taken this case to trial and given it his "best shot." He explained that he believed they had a "good shot" on the rape charge but that "they had him locked in" on the incest charge. Trial counsel testified that he does not promise his clients probation, even when the prosecutor agrees to it, because it is ultimately the trial court's decision. Trial counsel did not recall telling the Petitioner to only say yes and no sir to the judge but explained that he typically tells his clients to listen, say "yes sir" and "no sir," and answer truthfully. Regarding his statement that the prosecutor was "tough," he explained that it was rare for this prosecutor to dismiss charges and that not only had she agreed to dismiss the rape and offered the Petitioner ten years on the incest charge, she was not opposed to the Petitioner receiving probation. Trial counsel testified that he never had any problems with the Petitioner and that there was no indication of any mental issues. He explained that he generally requests such evaluations in cases involving A felonies, but he did not see a need to make such a request in this case.

Trial counsel explained that the victim appeared to be a "fabulous witness" from what he observed at the preliminary hearing and that she always maintained that she was raped. According to the victim, the Petitioner forced himself onto her and would not let her go. Afterwards, she "[c]alled the police, and she was taken to MSARC; and of course, identity was never an issue; and the TBI report was just the last straw." The Petitioner's DNA was found. He also explained that there was no impeachment material because the victim, approximately twenty years old at the time, only had a traffic ticket. Trial counsel stated that he told the Petitioner that if the Petitioner did not get probation, they could petition the trial court later for "cut time" if he stayed in Shelby County but that, otherwise, he would be out of the trial court's jurisdiction. Trial counsel told the Petitioner, "We'll go out and give it our best shot," and the Petitioner said, "Let's do it." However, after the hearing the Petitioner yelled at him for the first time saying, "You tricked me."

The post-conviction court credited the testimony of trial counsel, found the Petitioner incredible, and denied post-conviction relief.

This timely appeal followed.

## ANALYSIS

The Petitioner contends that the post-conviction court erred in denying him post-conviction relief because he received the ineffective assistance of counsel; specifically, he contends that his guilty plea was not knowingly and intelligently entered and that trial counsel failed to request a mental evaluation. The State responds that the Petitioner failed to

include his guilty plea transcript in the record on appeal and, as such, this court must presume that the transcript supports the ruling of the post-conviction court; further, the Petitioner has failed to prove that his trial counsel was ineffective, that his guilty plea was unknowingly and unintelligently entered, or that a mental evaluation was necessary.

Petitions for post-conviction relief are governed by the Post-Conviction Procedure Act. Tenn. Code Ann. §§ 40-30-101 to -122.  To obtain relief, the petitioner must show that his conviction or sentence is void or voidable because of the abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103. The petitioner must prove his factual allegations supporting the grounds for relief contained in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(2)(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is clear and convincing when there is no substantial doubt about the accuracy of the conclusions drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

The post-conviction court's findings of fact are conclusive on appeal unless the evidence in the record preponderates against them. See Nichols v. State, 90 S.W.3d 576, 586 (Tenn. 2002) (citing State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999)); see also Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001).  The petitioner has the burden of establishing that the evidence preponderates against the post-conviction court's findings. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). This court may not re-weigh or reevaluate the evidence or substitute its inferences for those drawn by the post-conviction court. Nichols, 90 S.W.3d at 586.  Furthermore, the credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the post-conviction court. Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

*I. Ineffective Assistance of Counsel*

Ineffective assistance of counsel claims are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001).  Thus, the trial court's findings of fact underlying a claim of ineffective assistance of counsel are reviewed under a de novo standard, accompanied with a presumption that the findings are correct unless the preponderance of the evidence is otherwise. Fields, 40 S.W.3d at 458 (citing Tenn. R. App. P. 13(d)).  The trial court's conclusions of law are reviewed under a de novo standard with no presumption of correctness. Id.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the defendant to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland

v. Washington, 466 U.S. 668, 687 (1984); see Lockart v. Fretwell, 506 U.S. 364, 368-72 (1993). A defendant will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley, 960 S.W.2d at 580. The performance prong requires a defendant raising a claim of ineffectiveness to show that counsel's representation was deficient, thus fell below an objective standard of reasonableness or was "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires a defendant to demonstrate that "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability means a probability sufficient to undermine confidence in the outcome." Id. Failure to satisfy either prong results in the denial of relief. Id. at 697. The Strickland standard has also been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. Strickland, 466 U.S. at 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

This two-part standard of measuring ineffective assistance of counsel also applies to claims arising out of a guilty plea. Hill v. Lockhart, 474 U.S. 52, 58 (1985). The prejudice component is modified such that the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59; see also Hicks, 983 S.W.2d at 246.

*A. Failure to Request a Mental Evaluation*

The Petitioner contends that counsel failed to take into account his reading and writing difficulties in their communication and failed to request a mental evaluation. The State responds that trial counsel was not ineffective for failing to request a mental evaluation of the Petitioner because (1) the Petitioner presented no proof that he had any mental difficulties; (2) the psycho-sexual evaluation reported that he did not have any mental-health

issues; and (3) trial counsel testified that he noticed no reading or writing limitations. We agree with the State.

The applicable test as to competency to stand trial is whether the accused has the sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational and factual understanding of the proceedings against him. State of Tennessee v. Billy Joe Carter, No. E2012-00279-CCA-R3-PC, 2013 WL 625597, at *15 (Tenn. Crim. App. Feb. 20, 2013)(citing State v. Benton, 759 S.W.2d 427 (Tenn. Crim. App. 1988)). Trial counsel, an experienced trial attorney, communicated regularly and thoroughly with the Petitioner about his case. Trial counsel had experience evaluating the mental competency of criminal clients and had requested mental evaluations in the past. Based upon his interactions with the Petitioner, he did not believe a mental evaluation necessary, especially since a psycho-sexual evaluation had already determined that the Petitioner did not have any mental issues. Trial counsel did not file a motion for a mental evaluation because he never noticed any reading or writing limitations and because the Petitioner understood the nature of the charges. We discern nothing in the record indicating that the Petitioner was unable to meaningfully consult with trial counsel. Moreover, as the State points out, the Petitioner failed to produce any mental health records at the evidentiary hearing illustrating a previous diagnosis of mental illness requiring his use of Thorazine or otherwise, despite faulting trial counsel for his inability to locate and utilize them. As such, he cannot show that he was prejudiced by trial counsel's failure to request a mental evaluation. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

### B. Plea Knowingly and Intelligently

The Petitioner generally contends that his plea was not knowingly and intelligently entered because he did not understand the proceedings and because his trial attorney told him that he would get probation if he pleaded guilty and had instructed him not to ask any questions during the guilty plea hearing. The State responds that the Petitioner failed to prove this allegation because he admitted at the post-conviction hearing that the trial court told him during the guilty plea hearing that probation was not guaranteed and that his trial attorney had previously advised him of the same.

When analyzing the voluntariness of a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238 (1969), and the state standard set out in State v. Mackey, 553 S .W.2d 337 (Tenn. 1977). See State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242. Similarly, our supreme court in Mackey required an affirmative showing of a voluntary and knowledgeable guilty plea. Pettus, 986 S.W.2d at

542. A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). In order to find that the plea was entered "intelligently" or "knowingly," Boykin requires that the trial court "canvass[ ] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequences." Blankenship, 858 S.W.2d at 904 (quoting Boykin, 395 U.S. at 244)(emphasis in original).

The courts have recognized that "the decision to plead guilty is often heavily influenced by the defendant's appraisal of the prosecution's case against him and the likelihood of securing leniency through a plea bargain." See id. at 904. (quoting Brown v. Perini, 718 F.2d 784, 786 (6th Cir. 1983)). There are a number of circumstantial factors that should be considered when examining the voluntariness of a guilty plea. Blankenship, 858 S.W.2d at 904. These factors include (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

Considering those factors, we conclude that the Petitioner's guilty plea was knowingly and intelligently entered. Although the transcript of the guilty plea hearing was not included in the record for our review, the transcript of the post-conviction hearing reveals that the post-conviction court informed the Petitioner that probation was not guaranteed. The Petitioner stated that he understood that probation was not guaranteed and that he still wished to plead guilty. The Petitioner also stated that trial counsel had told him prior to the hearing that probation was not guaranteed. Regarding the Petitioner's claim that he had mental issues, he did not present any evidence at the post-conviction hearing demonstrating his limitations and how they affected his guilty plea. Trial counsel testified that a psycho-sexual evaluation the Petitioner received had already determined that the Petitioner did not have any mental issues, and he did not seek an additional evaluation because he never had any trouble communicating with the Petitioner or noticed any other limitations. As a result of his plea, the Petitioner's rape charge was dismissed; thus, the plea allowed him to avoid a greater penalty. Further, the Petitioner had multiple prior convictions, and as a career offender, he would have faced fifteen years at sixty percent on the incest charge alone if he had gone to trial. We also note that the Petitioner never denied having intercourse with the victim; he only alleged that the encounter was consensual, which is not a defense to incest. Given the foregoing, we conclude that the post-conviction court did not err in concluding that trial counsel was not ineffective and that the Petitioner's plea was knowingly and intelligently entered. Likewise, the Petitioner has failed to prove any deficiency in trial counsel's performance.

## CONCLUSION

Based on our review of the record and the applicable law, we affirm the judgment of the post-conviction court denying relief.

_____
D. KELLY THOMAS, JR., JUDGE